Please call the last case. The final case for oral argument, case number 24-2323 from the Eastern District of Arkansas, United States v. Muhammad Arif. Mr. Webster. May it please the court, my name is John Webster and I'm here today representing the United States. As argued and shown by the United States at trial, Mr. Arif's actions affected interstate commerce and occurred in interstate commerce. Roadways are channels of interstate commerce. Vehicles are instrumentalities of interstate commerce. Counsel, let me jump right in here because it's only a 10-minute argument. In Lopez, the United States Supreme Court said that the Constitution withholds plenary police power from Congress. How is the government's position in this case consistent with Lopez? Because a reversal in this case, Your Honor, does not create a plenary police power because it's an application of existing precedent to these specific facts. And when you apply this court's precedent regarding other types of instrumentalities or channels and you apply it to particular facts in this case, the application is limited to the extent that there is no plenary police power created. But is it really limited? What is the limiting principle of your position? It seems to me that if mere use of a roadway is enough to get affecting commerce, then every crime is going to be affecting commerce and therefore you have Yes, sir. I understand the concern, Your Honor. The limiting principle is the offense here that was committed by Mr. Arif was committed while he's traveling through a channel of interstate commerce using an instrumentality of interstate commerce. But none of that language is in this statute. This statute says affecting interstate commerce, not using instrumentalities or channels. Affecting or in. The distinction here is that we're not saying that the mere employment of an instrumentality is what satisfies the jurisdictional nexus. What we're saying is here you had the offense itself committed in the course of traveling through a channel of commerce and using an instrumentality of interstate commerce just like a cell phone, just like a computer. You're back to channel and that's not what the statute says. It says affecting. So where's the effect? The effect is, I mean, it's just the same as a cell phone, Your Honor. When you use a cell phone and you connect to the telecommunications network, even if it's intrastate, this Court has said that's sufficient to satisfy the jurisdictional requirement. But is it really the same? I mean, if you connect to a cell phone, you're necessarily using a multistate network, whereas a roadway can be used intrastate. It can be used intrastate, Your Honor, but even intrastate, you know, roads can, you know, be considered channels, the use of which can have an effect on interstate commerce. I mean, it's the... Well, so could the parking lot and the sidewalk? Well... The air? No, Your Honor. I would not say the air, most certainly. What about the parking lot and the sidewalk? The parking lot and the sidewalk, probably not, Your Honor, because again, it's not, you know, this is not a situation where we're saying simply because a car is involved. That'd be akin to saying that, you know, simply because someone had a cell phone in their pocket, you know, they're not using the cell phone, but when they place that call and commit the offense during the course of that call, they're, you know, accessing the channel, using an instrumentality. It's the same principle that applies here. How do you square your argument with our Quigley case? Quigley? Quigley is distinguishable for several reasons. One, Hobsack for Hobbery is sort of a different animal than 1591. And so, you know, interstate commerce is sort of viewed differently that way. Plus in Quigley, the use of the vehicle was merely incidental to the offense. They had already traveled, stopped, then committed the robbery. Here, he's traveling, and while he's traveling, he's committing the offense. He's committing it, you know, during the course of his travel, which is not what occurred in Quigley. Again, you know, as this Court has held, telephones and the internet, computers, the use of those in the course of committing a violation of Section 1591A is sufficient to satisfy the jurisdictional requirement of the statute. Here, just as with the cell phone, just as with the computer, Mr. Arif is using that, you know, he's accessing that network. The same as a telecommunications network or an internet network, he's accessing that network of roadways that are used to, you know, promote commerce all over the country. And while he's doing that and traveling on that channel, he's committing, he initiated, committed, and completed the offense, all while he's accessing, you know, a channel of interstate commerce using instrumentality again. I'd like to go back to Quigley. I don't understand the distinction you're making as to why the defendants in Quigley were not also using an instrumentality. Because again, they weren't using, they weren't accessing, you know, a channel and using the instrumentality while committing the offense. That's the key distinction here. In Quigley, they had already stopped. But they stopped the car after they'd lured people in it, and they stopped and robbed them and attacked them. That's not using the vehicle? Well, it is using the vehicle, but it's using the vehicle in a way that's incidental to the offense. They didn't, you know, they didn't have to use the vehicle. Here, he specifically chose to use this vehicle to commit the offense. He chose it to isolate the victim, to, you know, get her. Isn't the location of the offense in this case just mere happenstance? I don't understand how the vehicle was a necessary component. I mean, it was a necessary component, I believe, Your Honor, because again, it was where he was able to isolate her and, you know, get her to where he could commit the offense. And it was his choice, just like in the catch case, you know, the two parties lived within walking distance of each other, but the defendant in that case chose to use a cell phone, chose to use the internet. That choice raised, you know, satisfied the jurisdictional requirement, and the same thing is true here. I see I'm into my rebuttal, unless the court has any other questions. I'll take a seat. Well, I was just going to say, you, on Keach, and the difference in the two cases, of course, is the government won from the jury in Keach and lost here. Well, we won. I haven't done it yet. Oh, I'm sorry. I haven't done it, but I intend to go into my file from Keach, because my strong recollection is the government made the same argument there that you're making here, and that the Supreme Court rejected, and that we rejected, but did not reverse because the jury was properly instructed. And I don't, I think the jury verdict is powerful here. And here the jury found the defendant guilty, and the district court reversed that on a Rule 29 motion. Well, I think if the jury had acquitted Mr. Keach, we'd have affirmed. The government would have made the same argument. It's possible, Your Honor. That's what I, I mean, this is, this is as close as it gets. Yes, sir. Thank you, Your Honor. Mr. Lemley. Good morning. May it please the Court. My name is Kevin Lemley for the defendant, Mohamed Arif. And I would like to just jump into the Quigley case, and I don't see that there's any distinction there whatsoever. Because in Quigley, the two victims are walking. The defendants come along, go, hey, get in our car, we'll drive you. So they drive them to the location where they then beat them and then robbed them. And this, this court found that even under those circumstances, that use of a car does not affect interstate commerce. And it went on to address the plenary police powers and said, if we're going to do something like that, it's just going to make every single robbery a federal jurisdiction. And in Quigley, the two victims even said, we're on our way to a liquor store. We're on our way to a business in interstate commerce. And even though the two defendants interfered with that, it still wasn't an actual effect on interstate commerce, which is what we have to show here. In addition to that, with the car, we've cited a lot of Eighth Circuit cases in our brief, but the, there's been a lot of precedent that just because we're in a car, that doesn't make an effect on interstate commerce. We still have to look at the actual use of the car and what was happening with it. And in the, the big point here, Your Honors, is the government just proved the wrong case below. And this case started off as a state prosecution under a state statute that did not have the interstate commerce requirement. Then when the government took it, they at trial just essentially said, hey, we've got a car, that's an instrumentality, that's enough. So they never proved how Mr. Aref got the car, if there was anything in interstate commerce. They never proved how he actually used the car. Did he go to work or not? They didn't prove what kind of work is it? Is there any sort of effect on interstate commerce? And when you go back in your file in, in Quiche, Judge Logan, there was a lot of interstate commerce in, in that victim. She went through a lot, but she was forced to have sex. She crossed state lines. She purchased drugs. She was moving money across state lines. The government just simply dropped the ball here. Mr. Aref could have been given the car as a gift. He could have never made an interstate use of it. It was a 2016 model car that they had no evidence whatsoever what had happened to it during the eight years from when it was made to when it was involved in this case. As far as being on a roadway, there was a new argument that was raised at appeal. But again, when we go back to Quigley, Quigley tells us that just being in a car on a road does not create an effect on interstate commerce. So how does accessing a roadway, an interstate roadway, differ from accessing the interstate telephone network or interstate internet network? Yes, Your Honor. And when we're, when we're accessing the phone, or if we're accessing electronic funds transfers, there is a good bit of interstate commerce that actually happens. The communications have to cross state lines to make everything happen. Or if we're dealing with electronic funds, the communications have to cross state lines to make the funds transfer. So in this case, if we had used Cash App or Venmo, then the government has a much stronger argument because those transactions have actually happened. Here when you're on a which is not enough for the statute that we're dealing with. You can be on a roadway due totally intrastate and have no effect to anything else that's going on in the roadway. And that also brings up another point that the government failed to make. They failed to make, or they failed to establish, was he even driving on a road? Or which one was it? Or if it was a road, how was it connected into the roadways and interstate commerce? They're making that assumption here on appeal. But for all we know, this could have been an interstate dirt road. And the only testimony that was admitted at trial was from the victim. She just said he was giving her a ride home. And when we look at our Eighth Circuit cases on the use of cars with interstate commerce, giving someone a ride home is not enough. Even just giving somebody a ride to work is not enough until you establish the nexus with interstate commerce of what that work is. I just want to touch briefly on the cash issue. The only testimony was that $20 in a note was given. And the argument below was that that could create an effect on interstate commerce. The case law is pretty clear that it is not. I could not find an Eighth Circuit case directly on point. But when we saw the different cases coming out of the different circuits, they were uniform, that just having a note or giving a note. What if it was euros? I'm sorry, Your Honor? What if it was euros? That would be a much, much better argument there, Your Honor, because we know that came from overseas. But again, and had Mr. Arif been younger, if this was a Venmo transaction or some electronic funds transfer, then possibly they have some merit there. But the only evidence in the record before us is there was $20. And then there's nothing in the record on what she did with that $20. So in quiche, we know she crosses state lines. We know she goes and gets drugs. There's a lot going on with it. For all we know, she put it in her pocket and never left. Or she burned it. There's just nothing in the record to show what was done with that $20. And then just the final thing, judges, when we looked at other Eighth Circuit cases, we take a step back, look at the legislative history, and we think that was important here that this statute we're dealing with came out of the TVPA. And when we put this in our brief, in the legislative findings of the interstate commerce that we have at issue, it was all about affecting a forced labor market. When you're making people work for sex, when you're bringing them over, forcing them into some type of market, that is the only legislative finding of how we have an effect on interstate commerce for the statute. So here, even taking the evidence at best for the government, we have a wholly intrastate solicitation. And while the solicitation is part of the statute, it's not part of the legislative finding on where we can get an actual effect on interstate commerce, which is required by Quiche. I'm happy to answer any other questions, but I have no further argument that's not already in the briefs. Thank you, Your Honors. Model? Your Honors, I'm down to just a few seconds, so just a couple of quick points. One, my co-counsel focuses on, you know, a wrist use of the car. There's no requirement under this statute that we prove that. He took the victim 20 minutes from one city to another city. The jury, using its common sense, could determine that, you know, that involved using a roadway. Because again, you're traveling between two cities. And then on the legislative history point, there's no requirement under the statute for a minor that you signed any kind of force or coercion. Simply the fact that she was a minor is sufficient. And the United States respectfully requests that this court reverse the decision of the district court. Thank you. Thank you, counsel. Case has been well briefed. Argument's been helpful. It's unusual facts, but that's not surprising. Well, Keish may have been more unusual, but they were close. We will take it under advisement and do the best we can with it. Thank you, counsel.